IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DUWAYNE CAREY, | ) | |
| | ) | Civil Action No. 06 - 1578 |
| Plaintiff, | ) | |
| | ) | Judge Terrence F. McVerry / |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| SUPERINTENDENT BARRY JOHNSON; | ) | |
| SUSAN MYERS, *CHCH*; MATTHEW | ) | Doc. No. 18 |
| MORROW, *EMPLOYMENT COORDINATOR*; | ) | |
| MARK HAMMER, *P.A.*; DR. JAMIL AHMED; | ) | |
| and DR. DURRE AHMED, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no.

18) be granted and that judgment be entered in their favor.

### II. REPORT

Plaintiff, DuWayne Carey, has filed a civil rights complaint pursuant to 42 U.S.C.

§ 1983 complaining about a misconduct he received while at the State Correctional Institution at

Pine Grove and his eventual transfer to the State Correctional Institution at Greensburg.  For the

reasons set forth below, the Defendants' Motion for Summary Judgment should be granted on the

basis that the Plaintiff has failed to set forth any evidence that he was denied his constitutional

rights.

### A. Standard of Review

Presently pending is Defendants' Motion for Summary Judgment (doc. no. 18).

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the

pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52). If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50.

### B. Material Facts

On February 28, 2006, Defendant Birkhimer intercepted a check Plaintiff had received from the United States Treasury. Subsequently, Plaintiff was issued a misconduct for

violating two provisions of the Pennsylvania crimes code: § 3922 Theft by Deception and § 901 Criminal Attempt. Plaintiff was found guilty of these misconduct charges and was sentenced to serve 45 days disciplinary custody (DC) in the Restricted Housing Unit (RHU). Plaintiff contends that Defendants were engaged in a civil conspiracy to issue the false misconduct charge and that he lost regular visiting privileges, telephone access, right to recreation, law library, and wages from his prison job. He further complains that Defendants lacked the jurisdictional authority to conduct a hearing and impose a sentence regarding violations of the Pennsylvania Crimes Code, and that he was unlawfully denied the ability to call witnesses at the misconduct hearing.

Plaintiff further complains that he was transferred from SCI-Pine Grove on August 25, 2006 to the State Correctional Institution at Greensburg (SCI-Greensburg) in retaliation for the instant litigation against the DOC. He claims that, as a result of this transfer, he lost the assistance of a jailhouse lawyer. Plaintiff claims that Defendants actions violated his rights as protected by the First, Sixth, Eighth, and Fourteenth Amendments.

### C. Liability under 42 U.S.C. § 1983

In order to assert liability pursuant to 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). Plaintiff's claims are discussed below.

1. First Amendment

Plaintiff claims that he was transferred to SCI-Greensburg in retaliation for his filing

3

the instant lawsuit. This claim invokes the protections of the First Amendment. In this regard, it is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

A prisoner's ability to file grievances and lawsuits against prison officials is a

4

protected activity for purposes of a retaliation claim. *See* <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); <u>Woods</u>, 60 F.3d at 1165 (prison officials may not retaliate against an inmate for complaining about a guard's misconduct). Plaintiff claims that the retaliation was the result of his filing the instant lawsuit. Thus, he had alleged the first element of a retaliation claim.

With respect to the second element, the Plaintiff alleges that he lost the assistance of a jailhouse lawyer. This does not appear to be the type of "adverse" action required in a retaliation claim. Moreover, Plaintiff fails to show that the protected activity was a substantial motivating factor in the state actor's decision to take the "adverse" action. The rationale for Plaintiff's transfer to SCI Greensburg was to place him in SCI-Greensburg's Differential Therapeutic Community and to allow him to reacquaint himself with his family that reside in the Pittsburgh Area, which would support a more positive transition back into society (doc. no. 18-2, p. 20).

This evidence shows that the prison officials would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. Consequently, Defendants are entitled to summary judgment as to Plaintiff's retaliation claim.

2.      <u>Access to Courts</u>

Plaintiff's further complains that he is not being permitted to receive assistance from a jailhouse lawyer. This allegations may be construed as purporting to state that he was denied access to court in violation of the First Amendment. A prisoner's constitutional right of "access to court" first was discussed in <u>Bounds v. Smith</u>, 430 U.S. 817 (1977). The issue in <u>Bounds</u> was whether States must protect the right of access to the courts by providing inmates with law libraries

or alternative sources of legal knowledge. <u>Bounds</u>, 430 U.S. at 817. The Court determined that the States did have such an obligation and held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id*. at 828.

In <u>Lewis v. Casey</u>, 518 U.S. 343 (1996) 1996, the Supreme Court effectively repudiated much of its prior holding in <u>Bounds</u>. In <u>Lewis</u>, the Supreme Court held that <u>Bounds</u> did not recognize an independent right of prisoners to have an adequate law library or legal assistance; instead, it concerned the established right of access to the courts. <u>Lewis</u> 518 U.S. at 351. Thus, the <u>Lewis</u> Court held that, in order to successfully challenge a denial of this right of access to the courts, it is not enough for an inmate to establish that the law library or legal assistance provided was inadequate; rather, he must establish that such inadequacies caused him actual harm.

In <u>Christopher v. Harbury</u>, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. <u>Christopher</u>, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued

independently.  <u>Christopher</u>, 536 U.S. at 417.  In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope."  *Id*.  The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation.  Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation.  *Id*. at 414.

Here, Plaintiff has failed to identify any legal action he was unable to pursue as a result of losing his jailhouse lawyer.   Nor has he alleged a remedy that may be awarded as recompense but that is not otherwise available in a future suit.  Thus, Defendants are entitled to summary judgment as to this claim.

2.      Sixth Amendment

Next, Plaintiff claims that Defendants violated the Sixth Amendment, which provides as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defense.

U.S. Const. amend. VI (emphasis added).

Plaintiff clams that, because he was charged with violations of the Pennsylvania Crimes Code in the relevant misconduct, his Sixth Amendment rights were violated .  However, his misconduct clearly sows that he was charged with two DOC infractions:  Category A, Class 1, #26 - Violation of the Pennsylvania Crimes Code, namely Theft by Deception and Criminal Attempt; and

7

Class 1, Category B - Unauthorized Use of Mail or Telephone (doc. no. 18-2, p.2). Thus, Plaintiff was not charged with either of these crimes in the misconduct, rather, he was charged with violating DOC rules. In Wolff v. McDonnell, 418 U.S. 539, 556, 563 (1974), the Supreme Court determined that prison disciplinary proceedings are not part of a criminal prosecution and, therefore, the full panoply of rights due a defendant in such proceedings do not apply. In so holding, the Court determined that an inmate may not be deprived of a liberty interest unless the inmate receives: 1) written notice of the hearing at least 24 hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. As discussed below, Plaintiff was not even entitled to these rights as he did not suffer a deprivation of a liberty interest as a result of his misconduct. More significantly, however, is the fact that his rights under the Sixth Amendment are not implicated by a prison disciplinary hearing and Defendants are entitled to summary judgment as to this claim.

3.    Eighth Amendment

Plaintiff next claims a violation of the Eighth Amendment. The Eighth Amendment's prohibition against cruel and unusual punishment guarantees that prison officials must provide humane conditions of confinement. Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In order to prove an Eighth Amendment claim, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v.

Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The Supreme

Court has explained that the first showing requires the court objectively to determine whether the

deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."

Hudson v. McMillan, 503 U.S. 1, 9 (1992) (citations omitted).

Second, an inmate must demonstrate deliberate indifference to prison conditions on

the part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at

347. The second prong requires a court subjectively to determine whether the officials acted with

a sufficiently culpable state of mind. *Id*. "[O]nly the unnecessary and wanton infliction of pain

implicates the Eighth Amendment." Farmer, 511 U.S. at 834 (quotation omitted).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Farmer, 511 U.S. at 838. Furthermore, "prison officials who act reasonably cannot be found liable

under the Cruel and Unusual Punishments Clause." *Id*., 511 U.S. at 845. Thus, a prison official may

be held liable under the Eighth Amendment for denying humane conditions of confinement only if

he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to

take reasonable measures to abate it

Broadly construed, Plaintiff's complaint appears to claim that the conditions of confinement in the RHU constitute cruel and unusual punishment in violation of his Eighth Amendment rights. Such a contention was roundly rejected in Griffin v. Vaughn, 112 F.3d. 703, 706-06 (3d Cir. 1997), wherein the United States Court of Appeals for the Third Circuit reviewed the conditions of restrictive custody as set forth in DOC regulations. The court noted that restrictive custody inmates were subject to limitations on visitation, library access, shower access and exercise. In addition, such inmates and were prevented from moving freely about the institution and were not entitled to participate in programs with general population inmates. Notwithstanding, the court had no trouble concluding that these conditions "clearly do not involve a deprivation of any basic human need." Id. at 708.

Here, Plaintiff simply has not come forward with any evidence that he was exposed to objectively harmful conditions and that any Defendant was deliberately indifferent to it. Thus, Defendants are entitled to summary judgment as to this claim.

4.    Fourteenth Amendment

Last, Plaintiff asserts that his rights under the Fourteenth Amendment were violated. The Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum v. Fano, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must

have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's due process claims is whether Defendants' actions impacted a constitutionally-protected liberty interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt, 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from administrative segregation. *See, e.g.*, Hewitt, 459 U.S. at 468; Wolff, 418 U.S. at 556; Montayne v. Haymes, 427 U.S. 236, 242 (1976); Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995); Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992). "It is well established that the decision where to house inmates is at the core of prison administrators' expertise." McKune v. Lile, 536 U.S. 24, 39 (2002). Moreover, an inmate does not have an inherent due process right to remain in or be transferred to any particular prison. *See* Meachum v. Fano, 427 U.S. 215, 225 (1976). Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in remaining free from administrative detention.

a.      Confinement in the RHU

Plaintiff's claims concerning his misconduct hearing and subsequent transfer to the

11

RHU are addressed by the decision in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), wherein the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "<u>atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life</u>." <u>Sandin</u>, 515 U.S. at 483 (emphasis added). Applying this test, the Supreme Court concluded that the prisoner in <u>Sandin</u> did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

First, it must be noted that a prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest. <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988). In other words, the mere filing of false charges against an inmate does not constitute a *per se* constitutional violation. *Id.* Before the Supreme Court handed down its opinion in <u>Sandin</u>, the federal courts had determined that the filing of unfounded administrative charges against an inmate may result in a procedural due process violation <u>only</u> when such charges were not subsequently

12

reviewed in a hearing. *Id*. at 952 (an allegation that a prison guard planted false evidence fails to state a claim where the procedural due process protections as required in Wolff v. McDonnell are provided) (citation omitted). Thus, even if false charges impaired a protected liberty interest, as long as prison officials granted the inmate a hearing and an opportunity to be heard, the filing of unfounded charges did not give rise to a procedural due process violation actionable under section 1983. *Accord* Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002); Jones v. Coughlin, 45 F.3d 677 (2d Cir. 1995); Franco v. Kelly, 854 F.2d 584, 587 (2d Cir. 1988); McClean v. Seclor, 876 F. Supp. 695 (E.D. Pa. 1995).

In light of the Supreme Court's ruling in Sandin, however, Plaintiff has not even demonstrated that he had a constitutionally protected liberty interest that was offended by Defendants' actions in allegedly issuing a false report. Specifically, in deciding whether a protected liberty interest exists under Sandin, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)). In this case, Plaintiff alleges that, as a result of the misconduct, he received 45 days of DC. Recently, the Court of Appeals for the Third Circuit held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under Sandin. *See* Young v. Beard, 227 Fed. Appx. 138, 2007 WL 824172 (3d Cir. 2007). Thus, it is unlikely that the filing of false charges, even in the absence of a hearing, would state a constitutional claim on the facts before this Court. *See* Strong v. Ford, 108 F.3d 1386 (Unpublished Opinion), 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute

deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of an atypical hardship on the inmate in relation to the ordinary incidents of prison life).  Thus, DOC was not required to give Plaintiff any due process protections with regards to his 45-day disciplinary sanction.  Consequently, Defendants are entitled to summary judgment as to this claim.

        b.      Prison Job

        Plaintiff complains that he was denied his prisoner wages when he was placed in the RHU.  It is well settled that prisoners have no inherent constitutional right to a prison job and no inherent constitutional right to wages for work performed while incarcerated. *See, e.g.*, Washlefske v. Winston, 234 F.3d 179 (4th Cir. 2000); Beatty v. DeBruyn 77 F.3d 484 (Table), 1996 WL 80168, at *1 (7th Cir. 1996) ("[I]f prison officials can constitutionally require inmates to work without pay, they can certainly deny prisoners pay for doing nothing."); Vanskike v. Peters, 974 F.2d 806, 809 (7th Cir.1992), *cert. denied*, 507 U.S. 928 (1993); Newsom v. Norris, 888 F.2d 371, 374 (6th Cir.1989) (prisoner has no constitutional right to prison employment or a particular prison job); Toussaint v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir. 1986) (inmates have no constitutional right to participate in prison work programs); Draper v. Rhay, 315 F.2d 193, 197 (9th Cir.) (noting that, because the Thirteenth Amendment excludes convicted criminals from the prohibition of involuntary servitude, prisoners may be required to work without pay), *cert. denied*, 375 U.S. 915 (1963); Sigler v. Lowrie, 404 F.2d 659, 661 (8th Cir.1968) (noting that there is no Constitutional right to compensation for prison work; compensation for prison labor is "by grace of the state."), *cert. denied*, 395 U.S. 940 (1969).[1]  Thus, Plaintiff must show that he has a property interest in prison

_____

    [1] *See also* Joseph v. U.S. Federal Bureau of Prisons, 232 F.3d 901 (Table), 2000 WL 1532783 (10th Cir. 2000) (holding that there is no eighth amendment claim for loss of a prison job).

wages, protected by the Fourteenth Amendment, to succeed in his § 1983 suit.

Both the federal and state courts in Pennsylvania have determined that Pennsylvania inmates do not have any constitutionally protected right to employment or to earn wages while incarcerated. *See, e.g.* Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975); Fidtler v. Pennsylvania Dept. of Corrections, 55 Fed.Appx. 33, 2002 WL 31648368 (3d Cir. Nov. 25, 2002); McCoy v. Chesney, 1996 WL 119990 (E.D. Pa. March 15, 1996); Aultman v. Department of Corrections, 686 A.2d 40, 42 (Pa. Commw. 1996), *aff'd*, 549 Pa. 577 (1997). Consequently, Plaintiff's claim concerning his prison job and prison wages do not state a claim upon which relief may be granted under 42 U.S.C. § 1983.

    c.    Visitation and Telephone Privileges

Plaintiff further complains about losing his visitation and telephone privileges as a result of his misconduct. It has long been settled that convicted prisoners do not have any inherent constitutional right to unfettered visitation. *See* Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989); Toussaint v. McCarthy, 801 F.2d 1080, 1113-14 (9th Cir. 1986) Bellamy v. Bradley, 729 F.2d 416, 420 (6th Cir. 1984); Lynott v. Henderson, 610 F.2d 340, 342 (5th Cir. 1980) ("convicted prisoners have no absolute constitutional right to visitation"); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 758-60 (3d Cir. 1979) (ban on contact visits does not violate due process rights of prisoners). Nor do inmates have any constitutional right to unfettered telephone calls. *See, e.g.*, Cook v. Hills, 3 Fed. Appx. 393, 2001 WL 132569 (6th Cir. Feb. 5, 2001); Gilday v. Dubois, 124 F.3d 277 (1st Cir. 1997); Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (noting that a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution) (internal quotation omitted).

For convicted prisoners, visitation and telephone privileges are a matter subject to the discretion of prison officials. Thorne v. Jones, 765 F.2d 1270, 1273 (5th Cir. 1985) (internal citation and quotation omitted). Prison visitation and the use of telephones by prisoners obviously implicates concerns about prison security and such concerns are preeminent. *Id*., at 1275 (citing Block v. Rutherford, 468 U.S. 576, 589 (1984). Here, Plaintiff has not asserted any facts tending to show that the restrictions on his visitation and telephone privileges are not related to legitimate penological interests, *i.e.*, discipline for violation prison rules. Consequently, Defendants are entitled to summary judgment as to this claim. *Accord* Henry v. Dep't of Corr., 131 Fed. Appx. 847, 848-49 (3d Cir. 2005) (holding that neither the due process clause nor Pennsylvania regulations guarantee inmates any protectable interest in prison visitation).

        d.       Transfer

Plaintiff further complains about his transfer to SCi-Greensburg. An inmate does not have any inherent constitutional right in the place of his confinement. Olim v. Wakinekona, 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Similarly, Pennsylvania prisoners do not have any state created liberty interest in specific housing. In this regard, Pennsylvania code clearly states that an inmate does not have a right to be housed in a particular facility. 37 Pa.Code § 93.11(a). *See also* Johnson v. Hill, 910 F.Supp. 218, 220 (E. D. Pa. 1996) (holding that prisoner placement is a matter of prison administration and a prisoner has no constitutional right to be placed in any particular cell or housing unit). Thus, Plaintiff has no state created liberty interest to be incarcerated in a particular institution. Jerry v. Williamson, 211 Fed.Appx. 110, 112, 2006 WL 3741840, *2 (3d Cir. December 20, 2006). Moreover, he has not shown how his transfer to SCI-Greensburg imposed an atypical and significant hardship on him in relation to the ordinary incidents

16

of prison life. Accordingly, the plaintiff fails to state a due process claim upon which relief can be granted based on his transfer to SCI-Greensburg.

## D. Conspiracy

In his Complaint, Plaintiff makes several accusations of conspiracy. In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). Plaintiff has concluded that Defendants and others conspired to violate his rights yet he has failed to evidence any facts showing an agreement or plan formulated and executed by the Defendants to achieve this conspiracy. Plaintiff cannot rely on unsupported claims of conspiracy. Without a factual showing which gives some substance to the conspiracy claims, Plaintiff's conspiracy claim amounts to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of wrongdoing by a Defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir. 1988) (citations omitted). Also, to survive a motion for summary judgment, the Plaintiff must establish that there is a genuine issue of material fact regarding the question of whether the Defendants entered into an illegal conspiracy which caused the Plaintiff to suffer a cognizable injury. Massachusetts School of Law at Andover v. American Bar Association, 107 F.3d 1026, 1039 (3d Cir.), *cert. denied*, 522 U.S. 907 (1997). In other words, to successfully counter the Defendants' motions for summary judgment, Plaintiff must provide specific evidence establishing that the Defendants agreed among themselves to act against him either unlawfully or for an unlawful purpose. Vieux v. East Bay Regional Park Dist., 906 F.2d 1330, 1343

(9th Cir.), *cert. denied*, 498 U.S. 967 (1990).

Here, Plaintiff has failed to introduce into this record any evidence which shows an agreement or plan formulated and executed by Defendants or anyone else which rises to the level of a conspiracy. At a minimum, absent some modicum of proof which tends to reveal the existence of an agreement which is designed to deny the constitutional rights of the Plaintiff, he cannot maintain his conspiracy claim. In sum, Plaintiff's allegations, standing alone, are patently insufficient for a reasonable jury to return a verdict in his favor.[2] Because the evidence which is included in the record is insufficient to raise a genuine issue of material fact, Defendants' Motion for Summary Judgment should be granted.

## F. State Law Claims

Finally, Plaintiff makes state law claims of violations of the Pennsylvania Constitution. A federal court has "supplemental jurisdiction" over claims that are "part of the same case or controversy" as a claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). Subsection 1367(c) authorizes a federal court to decline jurisdiction over state claims even though the court has federal jurisdiction when:

---

[2] *See* Schowengerdt v. United States, 944 F.2d 483 (9th Cir. 1991) (allegations in a complaint which are based on inference and speculation cannot defeat a motion for summary judgment on a conspiracy claim), *cert. denied*, 503 U.S. 951 (1992); D.R., a minor v. Middle Bucks Area Vocational School, 972 F.2d 1364 (3d Cir. 1992) (the Plaintiffs failed to show that the Defendants engaged in a conspiracy to interfere with the Plaintiffs' civil rights); City of Omaha Betterment Association v. City of Omaha, 883 F.2d 650 (8th Cir. 1989) (evidence was insufficient to support a finding that an employer and a local union conspired to deny an employee a promotion because of her gender); Gometz v. Culwell, 850 F.2d at 464 (summary judgment should have been granted regarding against allegations of a conspiracy purportedly engaged in between prison officials because no credible evidence supported the conspiracy claim); Oatess v. Norris, 431 Pa. Super. 599, 637 A.2d 627 (1994) (an inmate's response to officers' motion for summary judgment in 1983 civil rights action alleging a conspiracy was not sufficient to establish the existence of a genuine issue of material fact).

1.      the claim raises a novel or complex issue of State law;

2.      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

3.      the district court has dismissed all claims over which it has original jurisdiction; or

4.      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

When "the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). This Report recommends granting summary judgment to all Defendants. It follows that the Plaintiff's state law claims should be dismissed as considerations of judicial economy, convenience, and fairness to the parties do not provide an affirmative justification for retaining jurisdiction. *Accord* Lovell Manufacturing v. Export-Import Bank of the U.S., 843 F.2d 725, 734 (3d Cir. 1988).

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no.1 8) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Dated: February 19, 2008

                                                    Lisa Pupo Lenihan
                                                    United States Magistrate Judge

cc:      Terrence F. McVerry
          United States District Judge

          Duwayne Carey
          723 Penwood Avenue
          Wilkinsburg, PA 15221